Bsevakd, J.
It has been contended that there was no legal evidence before the court, that the witnesses to the will had ever been examined, touching the execution thereof; or that the will was ever rejected by the Ordinary.
It is not material to inquire, whether in the year 1777, the Ordinary was authorized to issue a dedimus,- to take the examination of witnesses respecting the execution,of a testament; or what was the proper mode of proceeding, at that time -; also, the execution and return of such a power, or commission. It iá sufficiently cer. tain that the will was before the Ordinary, and was rejected, or not admitted to probate by him. This is clear from the fact, that letters of administration, as in the case of intestacy, were granted, which would not have been done, if the will had not been rejected. What the proof was, upon which the Ordinary decided, does not clearly appear, as there was no regular record of the proceedings-produced, and it did not appear that better evidence was in the power of the parties to produce. But the granting letters of administration is an: admitted fact, from which we must conclude that the Ordinary had declared in favor of intestacy. This was a judicial act of a court having competent authority, and must be deemed conclusive, until repealed by competent authority : and a court of common law has no right to admit evidence to impeach it-. It is to be re-membéred that this is is a question concerning personal estate, the *200 belonged to the Court of Ordinary. JS® to real estate, the Ordinary has no concern with it; and a will of lands is not to be proved or rejected before him. administration of which
The decision of the Ordinary, in 1777, however, was in common form,, and all persons interested were not made parties. If the decision had taken place in solemn form, it is admitted that it could not now be a subject of dispute. It has, indeed, been contended,. that the refusal of the Ordinary to admit a testament to probate, does not stand on the same ground as an admission to probate ;■ and that in the first case the decision may be controverted at any time after a lapse of thirty years and more. But I can find nc authority for this distinction, nor any reason for it. It has also been contended, that the decision of a Court of Ordinary, according to common form, may be disputed after thirty years ; even after forty years ; and 8 Vin Abr. 168, was cited to maintain this points Viner quotes “ Ms. Tab. Feb. 24, 1726 — will set aside, after forty •years possession under it, upon account of the insanity of the devi-sor, and although in prejudice of a purchaser.” It is not said that the will was set aside by the spiritual court. The will must have been of real estate, and set aside in equity.
Swinburne, in treating of the .two forms of proving testaments, says, that “the difference of form worketh this diversity of effect; namely, that the executor of the will proved in the absence of them which have interest, may be compelled to prove the same again in due form of law. And if the witnesses be dead in the mean time, it may endanger the whole testament, especially, if ten years be not past since the probation, where the necessary solemnities are presumed to have been observed.” 2 Swinb. part 6, sec. 14.
It is probable the word ten,-in figures, may have been mistaken for thirty. All other authors agree on this point, that a will proved in common form only, may be questioned at any time within thirty years next after. Godolph, 62. 4 Burr. Eccl. and 207 Lovelass, 212. Toll. sec. 10. Salk. 153. Stra. 481. Cowp. 322. 7 Rep. 125. More than thirty years elapsed, after the decision of the Ordinary in this case, before any attempt was made to controvert it.
An appeal might have been made within the time allowed for that purpose. This was not done; and, therefore, when the will w'as offered to be proved in October, 1812, the Ordinary acted properly in refusing to admit the same.
The counsel for the appellants tendered an issue in the District. Court, viz., “ That Thomas Port duly made and executed his last. *201 Will and testament, and that the same ought to be admitted to probate.” The appellees refused to join issue; the judge refused a rule to compel them, and confirmed the decision of the Ordinary. The appellants rely on the act of assembly of 1799, which enacts, u That if any person or persons shall think themselves aggrieved by the judgment, sentence, decree, determination, denial, or order, of any of the Courts of Ordinary, it shall be lawful for such person or persons to appeal therefrom, to the Court of Common Pleas-of the district in which the said Court of Ordinary shajl be holden, within twenty days next after such judgment, sentence, «fee., shall have been given.” And the Court of Common Pleas are enjoined to hear and determine such appeals, according to the practice of the county courts: “ And all matters of fact shall be tried by a jury.” The act of assembly authorizes an appeal from the determination of the Court of Ordinary. The party aggrieved was entitled to appeal. It was heard and determined by the Court of Common Pleas. But the appellant could not appeal from the decision of the Court of Ordinary in 1777 : and if he could, he would not be entitled to do so under the act of assembly of 1799, for that act limits the time for appealing, to twenty days next after judgment.
But it has been insisted, that the appellants were legally entitled to a trial by jury; and that the Court of Common Pleas ought to have directed the issue tendered to be tried. To have done this, would, in my opinion, have been travelling out of the matter before the court. The matter of the appeal was the decision of the Ordinary of Marion district, whose decision was, that the objection to hearing evidence in probation of a will, which .had been refused admission to probate, in 1777, was sufficient in law : and that after thirty years, the determination of the Court of Ordinary, rejecting the probate, was not liable to be controverted. It was a question of law, and not of fact. It was indeed contended, that the will had not been refused admission to probate, but no issue was ten-tered upon that point. The appeal was not made on that ground, although that ground was involved in the case.
To have directed the trial of the issue tendered, would have been admitting evidence to impeach the judicial act of a competent tribunal. The determination of the Court of Ordinary, in 1777, ought to be considered conclusive, until repealed.
If the fact, that such a determination was made, had been denied, and an issue had been tendered, with a view to try that fact expressly, the case might require further consideration. But that *202 fact appears to be conceded in the brief, although not in explicit terms: for the grounds of appeal are, that the witnesses to the will were never examined as to its execution ; that the legatees were minors, and not barred of their rights by length of time ; that the will was not rejected according to solemn form, and after notice to the parties concerned.
As to the limitation of time, I can find no authority giving any countenance to an exception in favor of minors, allowing a testament, proved or rejected in common form, to be contested, or the decision of a Court of Ordinary thereon disputed, after a lapse of thirty years. ■ I conclude that there is no legal foundation for such an exception ; and I can discern no reason why there should be any. I am of opinion the motion ought to be refused.
Smith, Bay, and Geimke, Js., concurred with Brevabd, J.
Codoock, J.
In this case I have the misfortune to differ from my brethren. I am of opinion that a new trial should be granted. A branch of the case was tried before me at Marion, in which an action was brought for the recovery of the lands devised in the will; on which occasion the evidence stated in the brief, together with some other evidence not stated therein, but very strong in its nature, established in my mind the following facts : That the testator was of sound mind at the time he executed his will; that the Ordinary did not decide on the cause ; and that the whole was a trick of those interested in the destruction of the will, to produce that effect; the legatees, and present appellants, being minors at that time. It was contended, that granting letters of administration, and the memorandum on the back of the will, prove that the Ordinary did determine on its validity. But when all the circumstances of the case are taken into consideration, I think myself warranted in drawing a different conclusion. At that time there was but one Ordinary in the State, and he resided in Charleston. When the validity of a will was to be determined, he sent a ¿tedi-ums potestatum to some persons residing in the neighborhood of the witnesses, who examined them, and sent their examination to the Ordinary. This mode of proceeding was adopted in the present cáse, and the paper purporting to be an affidavit, was returned. Can it be believed, that any man of business would decide on the validity of a will upon such incomplete evidence ? I cannot believe it. But it is asked, why then grant administration ? Because the party applying for the administration would make the necessary oath, and the Ordinary may have conceived that he could do no more, and, therefore, viewed-it as a case in which no will had been *203 made. This is, however, a conjecture, and I do not deem it necessary to say what was the inducement to the act, but to decide on the character of the act itself; for we daily meet with absurdities that we cannot account for. In fact, it is in the nature of absurdities ■ , , not to be accounted for. The facts, themselves, prove that there was no foundation for the decisionnor do the words “ not proved,” import a decision ; we know not when- they were made, whether before, or after, having received this incomplete evidence attached to the dedimus. Bellune, the witness sworn before me, and the only surviving witness to the will, deposed, that the paper called an affidavit, had been handed to him about the time it was written, and that after reading the contents, he refused to sign it ; that an attempt-was made to explain its meaning, but the explanation not being-satisfactory, he persisted in his refusal.. I will, however, suppose for a moment that the Ordinary had decided, and, nevertheless, the case ought to be reviewed. Authority was produced from 8 Vin. p. 169, to shew, that after a lapse of thirty years, a will proved in common form of law, could not be questioned. I am not disposed to dispute this authority, but I do not conceive the case to be analagous to the one before me. There the will was proved as wills usually are ; the parties took under the will, and no reason is given why the validity of the will might not have been at first questioned. In such a case, courts will presume that all was-done that could have been done. But can that presumption exist now, supposing it a decision 1 For we have on the face of the proceedings, the foundation of the judgment; from which it appears that the judgment was illegal and unfounded. It is not possible to enact laws, and establish rules, which will embrace every possible case with equal precision. It is no doubt a good rule, that a decision, which has been in operation for thirty years, should not be disturbed ; but there certainly may be exceptions. Here the enjoyment of the property would not have been altered, by establishing the will at first, for the testator had devised it to his wife during her life time; and she lived until 1811. The rights of the present contending parties have never before conflicted. The decision, if one, was made during the minority of the appellants, and such is the usual effects of decisions in courts of justice, that they may have supposed it inviolable. On the last ground, however, I think a new trial should have been granted. For in the case of Fitzpatrick, it vvas'decided, that although the parties consented, yet the language of the act being imperative, the case of an appeal from the decision of an Ordinary must be submitted to a jury.
Motion refused.